## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

RASHID JAMON DRAYTON,    )
                                   )
        Plaintiff,         )
                                   )
v.                         )        CV421-157
                                 )
JOHN WILCHER,         )
                                 )
        Defendant.     )

## <u>ORDER</u>

*Pro se* plaintiff Rashid Jamon Drayton has filed this 42 U.S.C. § 1983 case alleging that correspondence from this Court was improperly handled by staff at the Chatham County Detention Center. *See* doc. 1 at 5. The Court granted him leave to proceed *in forma pauperis*, doc. 5, and he has returned the required forms, docs. 6 & 7. The Court must, therefore, screen his Complaint pursuant to 28 U.S.C. § 1915A.

Because the Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in the Complaint are taken as true and construed in the light most favorable to the plaintiff. *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011).

Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal). Because Drayton is proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings drafted by attorneys and are liberally construed. *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

Drayton's allegations are straightforward. He alleges that he received unspecified "documents" from this Court related to a civil suit. *See* doc. 1 at 5. Although he received a copy of those documents, he was informed that he could not retain the original, which would be placed with his property. *Id.* He alleges that the originals may have been lost. *Id.* He seeks two million dollars in damages. *Id.* at 6.

## I.   Improper Defendant

There is no factual allegation implicating Defendant Wilcher's participation in, or even awareness of, the events alleged in the Complaint. *See* doc. 1 at 5. The only plausible construction of the Complaint is that Drayton seeks to hold Wilcher liable in his supervisory capacity. However, such liability does not exist under § 1983. *See Averhart v. Warden*, 590 F. App'x 873, 874 (11th Cir. 2014) (citing *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010)) ("Section 1983 claims

may not be brought against supervisory officials on the basis of vicarious liability or *respondeat superior*.").  Drayton, therefore, fails to state any claim against Wilcher on which relief can be granted.

## II.   Legal Mail

Drayton's characterization of his claim as involving his "legal mail" implicates two potential constitutional issues, his right of access to the courts, and his right to free speech under the First Amendment.  The Eleventh Circuit has held that "the right to send and receive mail exists under the First Amendment," and violations of that right may be vindicated by nominal damages, even "absent any actual injury."  *Al-Amin v. Smith*, 511 F.3d 1317, 1333, 1335 (11th Cir. 2008); *see also Christmas v. Nabors*, 76 F.4th 1320, 1328 (11th Cir. 2023).  A viable access-to-courts claim requires an "actual injury," in the form of evidence that "a nonfrivolous[ ] post-conviction claim or civil rights action," was "impeded."  *Al-Amin*, 511 F.3d at 1332.  "[I]n other words, the plaintiff[ ] must demonstrate that [he] had a legitimate claim that [he was] unable to pursue due to the prison's restrictions."  *Bass v. Perrin*, 170 F.3d 1312, 1320 n. 13 (11th Cir. 1999).  Since Drayton does not allege his pursuit of any nonfrivolous case was impeded, *see* doc. 1 at 5, he fails to state an

access-to-courts claim. The Court, therefore, considers whether his general right to send and receive mail has been violated.

The Eleventh Circuit has recently emphasized that "[a] simple rule has governed prison mail procedures in our Circuit for nearly 50 years: a prison official may not open an inmate's properly marked legal mail outside of his presence." *Christmas*, 76 F.4th at 1328 (citation omitted). The principle is widely accepted among the Courts of Appeals. *See, e.g., Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1210 (9th Cir. 2017) ("In addition to the Third and Eleventh Circuits, the Second, Sixth, and Tenth Circuits have recognized that the opening of legal mail outside of a prisoner's presence implicates First Amendment rights." (citations omitted)). *Christmas* also explicitly found that the district court erred in dismissing a claim which, although it "did not allege that [jail staff] opened his mail outside of his presence, [it] did allege that they *could* access his legal mail outside of his presence in the future." 76 F.4th at 1329.

The First Amendment right recognized in *Al-Amin* and *Christmas* is not as expansive as it might first appear. "Legal mail," as used by the Eleventh Circuit, clearly refers to "attorney mail." *See Al-Amin,* 511 F.3d

4

at 1334 ("Thus, we conclude that Al-Amin has a First Amendment free speech right *to communicate with his attorneys* by mail . . . ." (emphasis added)). The protections afforded to attorney communications do not extend to all "legal" documents generally. "[U]nder federal law, filings in [an] action, be they court orders or documents filed by [parties], are a matter of public record and are not confidential legal mail."[1] *Zamaro v. Moonga*, 2009 WL 5197851, at *2 (E.D. Cal. Dec. 22, 2009) (citing *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996)); *see also Vaughn v. Schoapt*, 2007 WL 3274189, at *1 (W.D. Pa. Nov. 5, 2007) ("Public Records such as Court Orders and Report and Recommendations are not special or legal mail."). The opening, and even inspection, of non-legal mail does not violate the Constitution. *Cf. Wolff v. McDonnell*, 418 U.S. 539, 575-76 (1974) ("[F]reedom from censorship [of mail] is not equivalent to freedom from inspection or perusal."); *see also, e.g., Dickerson v. Chatman*, 2008

---

[1] Courts have recognized that, for purposes of an access-to-courts claim, court mail is "legal mail." *See, e.g., Ford v. Coleman*, 2015 WL 3404191, at *6 (M.D. Fla. May 26, 2015) (citing *Taylor v. Sterrett*, 532 F.2d 462, 475-76 (5th Cir. 1976) ("In this perspective, we hold that an inmate's right of access to the courts supports the portion of the district court's order requiring that incoming prisoner mail from courts, attorneys, prosecuting attorneys, and probation or parole officers be opened only in the presence of the inmate.")). As discussed above, however, access-to-courts claims require allegation of an "actual injury," and, in the absence of any such injury here, whether correspondence from the Court might constitute "legal mail" in that context is irrelevant.

WL 4155624, at *3 (M.D. Ga. Sept. 5, 2008) ("In light of the fact that a prison has a legitimate security interest in opening and inspecting incoming mail for contraband, plaintiff's allegation that his *incoming* mail was opened and read but not censored does not rise to the level of a constitutional violation." (citing *Thornburgh v. Abbott,* 490 U.S. 410, 413-14 (1989); *Turner v. Safley*, 482 U.S. 78, 91-92 (1987)). Thus, to state a viable First Amendment claim, a prisoner must allege that the correspondence at issue was properly "legal mail," *i.e.*, correspondence with his or her attorney.

Construed as challenging the treatment of "personal mail," Drayton's claim faces even greater obstacles. As noted above, the inspection of non-legal mail, in the absence of allegations that it is censored based upon its subject matter, does not allege a constitutional violation. *See, e.g., Dickerson*, 2008 WL 4155624, at *3. The United States Court of Appeals for the Third Circuit has recently noted that it was unable to identify "any precedent that . . . it violates the First Amendment for [a prison] to use vendors . . . to scan non-privileged mail, send the digital files to the prisons, and destroy they originals." *Rancourt Little Mountain Woodell v. Wetzel*, 2022 WL 17424287, at *2 (3d Cir. Dec.

6

6, 2022).  The Third Circuit has similarly held that such a policy did not violate the Fourth Amendment.  *See Robinson v. Pennsylvania Dept. of Corrs.*, 851 F. App'x 289, 293 (3d Cir. 2021).  Some courts have, however, recognized the *possibility* that interference with non-legal mail might violate the Constitution.  *See, e.g., Thompson v. Ferguson*, 2020 WL 7872629, at *10 (E.D. Pa. Dec. 31, 2020) (citing *Thornburgh*, 490 U.S. at 407-08; *Turner*, 482 U.S. at 91-93).  Drayton's allegations that correspondence from this Court may have been misplaced by Chatham County Detention Center staff, after they provided him with copies of that correspondence, are simply too vague.  Those allegations, therefore, are insufficient to state a claim upon which relief can be granted.

Although the Complaint fails to state any claim, Drayton is entitled to an opportunity to amend before dismissal.  *See, e.g., Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015) ("Generally, when a more carefully drafted complaint might state a claim, a district court should give a *pro se* plaintiff at least one chance to amend the complaint before the court dismisses the action.").  Accordingly, Drayton is **DIRECTED** to submit an Amended Complaint clarifying his allegations of interference with his mail by no later than February 16, 2024.  To facilitate his preparation of

the Amended Complaint, the Clerk is **DIRECTED** to send him a blank Form Pro Se 14 (Complaint for Violation of Civil Rights (Prisoner)). Drayton is advised that his amended complaint will supersede the current operative complaint and therefore must be complete in itself. *See Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1370 n. 6 (11th Cir. 1982). Drayton is further advised that failure to timely submit his amended complaint may result in a recommendation that this case be dismissed for failure to obey a court order or failure to prosecute. *See* Fed. R. Civ. P. 41(b).

Finally, the Court must assess Drayton's filing fee. *See* 28 U.S.C. § 1915(b). Plaintiff's prisoner trust fund account statement reflects average monthly deposits of $152.17. Doc. 6 at 1. Based upon his furnished information, he owes an initial partial filing fee of $30.43. *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). His account custodian shall set aside 20 percent of all future deposits to the account, then forward those funds to the Clerk each time the set aside amount reaches $10, until the balance of the Court's $350 filing fee has been paid in full. In the event plaintiff is transferred to another institution, his present

custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian.  The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.

**SO ORDERED,** this <u>31st</u> day of January, 2024.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA